# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

MARY MITCHELL on behalf of plaintiff  )
and the class defined herein,          )
                                        )
      Plaintiff,           )
                                        )
    v.                           )      CAUSE NO.: 2:12-CV-523-TLS
                                        )
LVNV FUNDING, LLC; RESURGENT           )
CAPITAL SERVICES, L.P.,                 )
and ALEGIS GROUP LLC,                   )
                                        )
      Defendants.          )

## OPINION AND ORDER

The Plaintiff, Mary Mitchell, has brought this putative class action against Defendants

LVNV Funding, LLC (LVNV), Resurgent Capital Services, L.P. (Resurgent), and Alegis Group

LLC (Alegis), asserting violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.

§§ 1692e and 1692f, arising out of dunning letters sent to the Plaintiff and the proposed class.

This matter is before the Court on the Plaintiff's Second Amended Motion for Class Certification

[ECF No. 81]. For the reasons stated herein, the Court grants class certification.


## BACKGROUND

According to the Second Amended Complaint–Class Action [ECF No. 74], LVNV is

engaged in the business of purchasing allegedly defaulted debts originally owed to others and

incurred for personal, family, or household purposes. Resurgent operates a collection agency,

and directs collection activities on behalf of LVNV. Alegis is the sole general partner of

Resurgent.

On January 30, 2012, Capital Management Services, L.P., employed by LVNV, sent the

Plaintiff, who is a resident of Indiana, a letter to collect on a debt. The letter stated, in relevant part:

> Dear Mary L. Mitchell:
>
> This company has been engaged by RESURGENT CAPITAL SERVICES, LP, the servicer of the account, to resolve your delinquent debt of $1356.06. Please submit your payment and make your check or money order payable to Capital Management Services, LP, to the above address.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.
>
> Capital Management Services, LP is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $474.62, which represents 35% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice. We are not obligated to renew this offer.
>
> For your convenience, this settlement may be made online at: www.cms-trans. com. For other payment options, please contact Capital Management Services LP . . . . .
>
> This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

(Second Am. Compl., Ex. A.) The letter also directed the recipient to "detach and return top portion with payment." (*Id.*)

The Plaintiff alleges that any alleged default on her account occurred before February 2006. The letter did not disclose the date of the transactions giving rise to the claimed debt, or advise that the debt was barred by Indiana's 6 year statute of limitations. Instead, the letter offered the Plaintiff a settlement amount. The Plaintiff alleges that the offer, in connection with

the failure to disclose that the claim was time barred, implied that LVNV could decide to sue the Plaintiff to collect on the debt. The Plaintiff alleges that the Defendants engaged in unfair and deceptive acts and practices "by causing its agents to send consumers collection letters that contain settlement offers on time-barred debts without disclosure of the fact that the debt is time-barred." (Second Am. Compl. ¶ 47.) The Plaintiff seeks actual and statutory damages pursuant to the FDCPA. She also seeks certification of a class and a subclass related to the claims set forth in the Second Amended Complaint.

## LEGAL STANDARD

### A.     Class Certification

Certification is proper only if each of the classes meets all of the requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Rule 23(a) is satisfied if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a)(1)–(4); *see also Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892–93 (7th Cir. 2012). Rule 23(b) is satisfied if, as relevant here, common questions of law or fact predominate over any questions that affect only individual class members, and a class action is superior to other available methods of adjudicating the dispute. Fed. R. Civ. P. 23(b)(3). A plaintiff who fulfills both conditions of Rule 23 is entitled to certification. *See Shady Grove Orthopedic*

*Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ( "[Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.").

Rule 23 "does not set forth a mere pleading standard"; rather, the plaintiff "must affirmatively demonstrate his compliance with the Rule [and] be prepared to prove" its requirements. *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In deciding whether Rule 23 has been satisfied, the district court undertakes "a rigorous analysis," making the necessary factual and legal inquiries. *Id.*; *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). This analysis may require some overlap with the merits of the plaintiff's underlying claim. *Wal-Mart Stores*, 131 S. Ct. at 2251.


**B.      FDCPA**

The FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in collection of any debt." 15 U.S.C. § 1692e. Section 1692e furnishes a nonexclusive list of prohibited practices, including the following: false representation of the character, amount, or legal status of any debt, § 1692e(2)(A); threat to take any action that cannot legally be taken, § 1692e(5); and use of any false representation or deceptive means to collect or attempt to collect any debt, § 1692e(10). Section 1692f further prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

In deciding whether a dunning letter violates § 1692e or § 1692f, the court asks "whether a person of modest education and limited commercial savvy would be likely to be deceived." *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014) (quoting *Evory v. RJM*

*Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007)). In other words, the court's

viewpoint is that of an "unsophisticated consumer." *Id.* (citing *Lox v. CDA, Ltd.*, 689 F.3d 818,

822 (7th Cir. 2012)).

Because letters like those at issue in this case may plausibly violate the FDCPA, they

should be allowed to proceed past the pleading stage. *See McMahon*, 744 F.3d at 1019–20

(holding that it is not automatically improper for a debt collector to seek payment of time-barred

debts, but because "it is plausible that an unsophisticated consumer would believe a letter that

offers to 'settle' a debt implies that the debt is legally enforceable," a suit alleging such claims is

not subject to dismissal at the pleading stage). On the other hand, "there will be occasions when

a district court will be required to hold that no reasonable person, however unsophisticated,

could construe the wording of the communication in a manner that will violate the statutory

provision [but] [i]n most instances, . . . a proper application of [Rule 12(b)(6)] will require that

the plaintiff be given an opportunity to demonstrate that his allegations are supported by a

factual basis responsive to the statutory standard." *McMillan v. Collection Prof'ls Inc.*, 455 F.3d

754, 760 (7th Cir. 2006).

Although plausibility is the standard at the pleading stage, proof is required when these

claims reach the merits. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800–01 (7th Cir. 2009)

(describing the three distinct categories of FDCPA suits alleging deceptive or misleading

statements and the proof required for each). The three categories of FDCPA cases are: (1) "cases

involving statements that plainly, on their face, are not misleading or deceptive"; (2) cases

"involv[ing] statements that are not plainly misleading or deceptive but might possibly mislead

or deceive the unsophisticated consumer"; and (3) cases "involving plainly deceptive

communications." *Id.* A plaintiff may prevail in a case involving statements in the second category "only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* at 800; *see, e.g.*, *Evory*, 505 F.3d at 776 ("We see a potential for deception of the unsophisticated in those offers but we have no way of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to conclude that the statute has been violated. For that, evidence is required, the most useful sort being the . . . consumer survey."). As an alternative to consumer surveys, "[r]ecipients of an allegedly misleading dunning letter can testify that they were misled, and if they are shown to be representative unsophisticated (or, *a fortiori*, sophisticated) consumers, the trier of fact may be able to infer from their testimony that the letter is misleading within the meaning of the [FDCPA]." *Muha v. Encore Receivables Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). A plaintiff who alleges claims that fall into the third category—cases involving plainly deceptive communications—need not produce extrinsic evidence "to prove what is already clear." *Ruth*, 577 F.3d at 801.

The Plaintiff appears to believe that the factual allegations in the Second Amended Complaint, if proven, will show a clear violation of the FDCPA without resort to extrinsic evidence. That is, they fall within the third category of cases identified above. The Court knows of no binding precedent, and the parties have not identified any, holding that a letter that is silent regarding the statute of limitations, and the consequences of a partial payment on a time-barred debt, is so clearly misleading that extrinsic evidence is unnecessary. In any event, whether the Plaintiff will be required to prove through extrinsic evidence that the Defendants'

communications would mislead an unsophisticated consumer is not yet before the Court. The

point is made to alert the Plaintiff that the Court does not agree with her position that liability is

a foregone conclusion.[1]


## ANALYSIS

The Plaintiff seeks to certify the following class:

> (a) all individuals with addresses in Indiana or Illinois (b) to whom LVNV,
> Resurgent, or any debt collector employed by LVNV or Resurgent (c) sent a letter
> seeking to collect (d) a credit card debt on which the last payment had been made
> more than five years (Illinois residents) or six years (Indiana residents) prior to
> the letter (e) which letter was sent on or after
> > (i) December 17, 2012 in the case of Indiana residents or
> > (ii) February 28, 2011 in the case of Illinois residents and
> (f) on or before January 7, 2013 (g) where the individual after receipt of the letter,
> > (i) made a payment,
> > (ii) filed suit, or
> > (iii) responded by requesting verification or contesting the debt.

(Mem. in Supp. 8, ECF No. 82 (footnote omitted).) The Plaintiff seeks certification of a class as

to all issues, or, alternatively, a class for liability and statutory damages. Additionally, the

Plaintiff seeks certification of a subclass consisting of all members who were sent the letter

attached as Exhibit A to the Second Amended Complaint. The Plaintiff requests that Edelman,

Combs, Latturner & Goodwin, LLC be appointed counsel for the class.

The Defendants maintain that the Plaintiff has failed to satisfy three of the four Rule

23(a) requirements. Most of the Defendants' challenges derive from the requirement that class

members either made a payment or filed a lawsuit in response to receiving a dunning letter. For

---

[1] The Plaintiff's position may have impacted her decision to seek certification of the subclass, but
that is not clear.

example, the Defendants argue that the Plaintiff's claims do not meet the typicality requirement because she did not pay anything in response to the letter, which is a requirement of the proposed class. They argue that commonality is absent because there is no common answer regarding why people paid money after receiving the letter. Finally, they submit that the adequacy of the representation is questionable given the Plaintiff's "efforts to gerrymander a class with the most benefit and least cost and risk to them." (Resp. in Opp'n 8, ECF No. 85.) The only class certification requirement the Defendants do not challenge is numerosity. However, they do challenge numerosity as it relates to the subclass of people who both paid money and received Exhibit A, the letter the Plaintiff received. They argue that the Plaintiff does not have any evidence regarding how many people received Exhibit A, how many of those individuals paid, or why they paid.

With respect to the Rule 23(b) requirements, the Defendants assert that the Plaintiff has not shown that class treatment is a superior method of adjudication because the classes require impermissible merits determinations and common issues do not predominate.


## A.       Numerosity

 Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1987), and the court may make common sense assumptions to determine numerosity. *See Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008) (finding numerosity after the plaintiff had identified 14 class members and introduced evidence that "support[ed] a much

larger estimate"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978) ("[D]ifficulty in determining the exact number of class members does not preclude class certification.").

The Plaintiff does not identify an exact number of class members, but relies on the amount of monies the Defendants collected on time barred debts as evidence that the class is sufficiently numerous. According to discovery responses, the Defendants collected $2,288,582.45 from class members on time-barred debts from Indiana residents and $9,196,642.83 from class members on time-barred debts from Illinois residents. (Mem. in Supp. 8, ECF No. 82; Ex. B, ECF No. 82-2.) The Plaintiff submits that the amount of the Plaintiff's debt, $1,356.06, can be used as an assumed average amount of debt being collected. Given these numbers, there is no reason to believe that the proposed class would fail the numerosity requirement. If those who meet the specific subclass requirements are not sufficiently numerous, the Court can decertify the subclass.

### B.      Commonality

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This means that "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 131 S. Ct. at 2551.

The Plaintiff alleges that the Defendants violated the FDCPA by sending a letter to putative class members offering to settle a debt without disclosing the fact that the statute of limitations on the debt had expired. (Second Am. Compl. ¶ 47.) The Plaintiff alleges that these

communications were misleading, deceptive, and unfair. She identifies the predominant common questions as (a) whether the Defendants attempted to collect time-barred debts without disclosure of that fact, (b) whether Exhibit A is misleading without disclosure of the time-barred nature of the debt, and (c) whether such practice and letter violates the FDCPA. The Defendants dispute that commonality is present. They assert that the reason why any particular individual decided to make a payment after receiving the letter is a highly individualized inquiry, and that the Plaintiff has offered no common answer to this "why" question that would apply to the actual damages class.

The Court finds that the commonality requirement is satisfied. Whether the Defendants, in fact, sent such letters presents a common question of fact. Whether the letters would mislead an unsophisticated consumer into believing that the debt was legally enforceable presents a common question of law. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (commonality met where defendants "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents"); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) (finding that whether the defendant's packaging was likely to deceive a reasonable consumer was a common question and that "[t]he claims of every class member will rise or fall on the resolution of that question"). Indeed, the case will end if a person of modest education and limited commercial savvy would not likely be deceived by receiving a letter that offered to settle a debt without also disclosing that the debt was subject to a statute of limitations defense. The class will prevail or fail on the answer to this question, not on the subjective beliefs of any of the recipients or on the reasons they may have repaid such a debt.

Additionally, each of the class members who received the letter under the circumstances described in the class definition had the potential to be harmed by the Defendants' conduct. The FDCPA allows for statutory damages, 15 U.S.C. § 1692k(a)(B), and proof of injury is not required for these damages to apply. *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2015). Neither is proof that the recipient of the letter was misled. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997). Because the class can be certified for liability and the determination of statutory damages, what the Defendants are really challenging is whether the Plaintiff can seek certification of the proposed class for actual damages, which requires proof that a consumer's actual confusion regarding the enforceability of the debt caused his damages.

The Defendants are correct that classes can only be defined using objective criteria. However, plaintiffs "can generally avoid the subjectivity problem by defining the class in terms of conduct (an objective fact) rather than a state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015). The Plaintiff has accomplished this by requiring inquiry into an objective fact—did the recipient of the letter pay the settlement, or at least inquire about it. Further, the Court does not require proof that every member of the class was harmed by the Defendant's conduct. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined after the class is certified."); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include persons who have not been injured by the defendant's conduct. . . . Such a possibility or indeed inevitability does not preclude class certification."); *see also Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 823 (7th Cir. 2012) ("[T]hat some class members' claims will fail on the merits if and when damages are decided [is] a fact generally irrelevant to

the district court's decision on class certification."). "If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification." *Phillips*, 736 F.3d at 1083.

## C.     Typicality

Under Rule 23's typicality requirement, the issue is whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The question whether the named plaintiff's claims are typical of those of the class members is closely related to the commonality inquiry. *Keele*, 149 F.3d at 595. The Seventh Circuit has summarized the typicality analysis as follows:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quotation marks and citations omitted); *see also De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be satisfied even if there are factual differences between" class member's claims, so long as those claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.").

The Defendants argue that the Plaintiff's claims are not typical of the class, which only

includes people who received a dunning letter and then (i) made a payment, (ii) filed suit, or (iii) responded by requesting verification or contesting the debt. The Defendants argue that the Plaintiff does not satisfy condition (i) because she did not make a payment, and that condition (ii) is included only to allow the Plaintiff to be the named representative. The Defendants assert that this "concocted class" would allow anyone to "represent a group of other people so long as they are the named plaintiff and tack on 'or filed suit' onto the class definition." (Resp. in Opp'n 5, ECF No. 85.)

The Court disagrees. Because liability is determined based on what an unsophisticated consumer would understand, the typicality of the Plaintiff's claim does not turn on what she subjectively understood about the letter. Her claim, that she received an illegal letter from the Defendants, upon which she took some action for which she has incurred damages, has the same essential characteristics as the claims of the class at large. It arises from the same practice of the Defendants and is based on the same legal theory. The Defendants fail to articulate the importance of the specific difference at issue, the fact that the Plaintiff did not pay on her debt after receiving the letter, but instead filed a lawsuit. *See, e.g.*, *Keele*, 149 F.3d at 594 (stating that the fact that the named plaintiff did not pay the collection fee sought in a form letter was "largely irrelevant"); *De La Fuente*, 713 F.2d at 232 (noting that Rule 23(a)(2) does not require all class members to suffer the same injury as the named representative). The Plaintiff may represent class members seeking both statutory and actual damages.


**D.      Adequacy**

Subsection (a)(4) requires that a class representative "fairly and adequately protect the

13

interests of the class." Fed. R. Civ. P. 23(a)(4). To be an adequate representative, a plaintiff must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have antagonistic or conflicting claims with other class members. *See Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Likewise, "[a] person whose claim is idiosyncratic or possibly unique is an unsuitable class member." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 758 (7th Cir. 2014).

The Defendants seize on the Plaintiff's alteration of the class definition from the original Complaint as proof that she is not an adequate representative. The Plaintiff maintains that she has changed the definition of the class so meaningful recovery may be obtained in light of the statutory caps. The Defendants speculate that the "true motivation in abandoning the overwhelming majority of those persons is due to the costs associated with giving notice in this questionable case." (Resp. in Opp'n 8). Speculation aside, there is nothing unusual about modifying a class definition. *See Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005); *see also In re Motorola Secs. Litigation*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation."). Moreover, a "modification" (no class has been certified yet) to a smaller group is consistent with the Plaintiff's obligation to protect the best interests of the class by making it more manageable and allowing for adequate recovery for those class members who may have suffered economic harm.

There being no conflict of interest between the Plaintiff and the proposed class, subsection (a)(4) is satisfied.

**E.      Rule 23(b)**

If the Rule 23(a) requirements are met, a court must then assess whether a class action is appropriate and prudent under at least one of the provisions of Rule 23(b).

Rule 23(b)(3) applies to most classes seeking monetary relief. The two overarching requirements are that common issues predominate and that a class action is the superior method for resolving the controversy. Fed. R. Civ. P. 23(b)(3). The Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"*Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 615 (1997)(citation omitted). Moreover, Rule 23(b)(3) was designed "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

**1.      *Predominance***

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* The predominance analysis "call[s] for caution when individual stakes are high and disparities among class members [are] great." *Id.* at 625.

The Defendants warn the Court that it will be required to examine the circumstances surrounding each consumer's decision to pay to determine if the payment was the result of the failure to include the statute of limitations disclosure. The Defendants argue that there are dozens of reasons that people pay debts, and that there is no proof that any of the payments were prompted by the timing or content of the dunning letter, as opposed to these other reasons. Thus, individual issues of whether each class member was deceived by the letters at issue and made a payment due to that deception will predominate. Again, the Court disagrees.

Causation issues, while individual, will not predominate over the common liability issues. Each alleged violation of the FDCPA concerns the same omission and offer of settlement for time barred debts. Common evidence will be offered concerning whether the letter would have misled or deceived an unsophisticated consumer. Thus, as to liability, "the class is entirely cohesive; It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

By their very nature, these common questions will then predominate over individual questions. Only statements that would improperly influence a consumer's decision whether to pay a debt are of concern in this litigation; consumers do not need protection against false or deceptive statements that are immaterial and that would not influence their decision. *See Muha v. Encore Receivables Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). Accordingly, if the letter is found to be in violation of the FDCPA, the reason any particular person paid on the debt after

receiving the letter will, in most instances, be the result of the influence of that misleading content. As the Plaintiff notes, once both the statute of limitations and the credit reporting period has expired, a consumer would receive no benefit from making a payment on the debt. The consumer can no longer be sued and the debt is no longer impacting the consumers' credit reports. In fact, a payment may renew the statute of limitations and allow the debtor to be sued for any remaining balance. Additionally, it is unlikely that any significant number of consumers would feel morally obligated to pay debt to an entity like LVNV, who is not the original creditor.

Based on the current record and the nature of the claims, it is reasonable to believe that relatively few class members will be unable to meet the causation requirement, and that their number can be ascertained through answers to simple interrogatories inquiring why they paid the debt. If moral obligation, or any other reason apart from the deceptive or confusing content of the letters is found to be a common basis for payment, those class members can still recover statutory damages. Accordingly, if necessary, the Court could create subclasses to address the difference between those consumers who are able to recover actual damages and those who are entitled to statutory damages only. Adjudicating the legal issue—whether the letters violate the FDCPA—will significantly advance the litigation and achieve economies of time and expense.


2.      *Superiority*

Under Rule 23(b)(3), plaintiffs must also demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating" the controversy. This requirement, along with the predominance requirement, is intended "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of

decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods.*, 521 U.S. at 615 (internal quotation marks and alterations omitted).

The Court finds that a class action is a superior method for adjudicating these claims. First, "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), is minimal. Potential plaintiffs may not even be aware of their rights and, if they are, be willing to pursue a claim with all the attendant requirements of being available for depositions, conferences, or even a trial. Moreover, the potential damages are not so significant as to make pursuit of individual claims likely. Given the allegations, there is no reason to believe that actual damages for individual members of the class would be sufficient to warrant an individual suit. The same is true for statutory damages, which may not exceed $1,000 under 15 U.S.C. § 1692k(a)(2)(A).

Despite these limits, the Defendants assert that a class action is not superior because recovery is de minimis where a debt collector's net worth is low or negative. The Defendants argue that LVNV and Resurgent can only be vicariously liable, if at all, for the conduct of the debt collectors who sent the letters. Thus, the class would only be entitled to 1% of CMS's or any other debt collector's net worth, which is an unknown number. *See* 15 U.S.C. § 1692k(a)(2)(B) (restricting recovery in class actions to lesser of $500,000 or 1 per centum of the debt collector's net worth). The Defendants contend that without this information, the Court cannot make the appropriate analysis regarding the potential recovery. The Court finds that the actual net worth of the relevant entities is a matter for trial, should the claims proceed to the damages phase. Even if the recovery is de minimis, there is value in allowing class treatment

here to address potentially unlawful behavior that would not otherwise be addressed because the barriers to bringing suit are too high. *Cf. Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (discussing the purpose of class actions in contexts such as these where the recovery of each plaintiff may be low). "[I]f class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on." *Miller v. McCalla*, 198 F.R.D. 503, 506 (N.D. Ill. 2001). While individual actions pursuant to the FDCPA have the potential for higher individual recoveries, this is only true under the assumption that each putative class member is aware of his or her rights, and willing to subject himself or herself to all the burdens of suing.

Additionally, "the desirability . . . of concentrating the litigation of the claims in the particular forum" favors predominance, Fed.R.Civ.P. 23(b)(3)(C), as the question regarding whether the letter violates the FDCPA should be decided only once, not through hundreds or thousands of individual suits. The Northern District of Indiana is as appropriate a forum as any given that many of the consumers reside in Indiana. Finally, "the likely difficulties in managing a class action" in this case do not warrant against certification, Fed. R. Civ. P. 23(b)(3)(D), as any such difficulties are outweighed by the advantages of concentrating this litigation. For example, it would be inefficient to conduct parallel litigation for each class member, which would entail the same discovery and require multiple courts to weigh the same factual and legal grounds for recovery. Finally, the parties have not presented any grounds upon which to find that "the extent and nature of any litigation concerning the controversy already begun by or against

class members," Fed. R. Civ. P. 23(b)(3)(B), should preclude class certification. Although another class action is pending in Illinois, *McMahon v. LVNV Funding, LLC*, 1:12-CV-1410, Illinois residents who fall within the revised class definitions in that case are specifically excluded from the requested class in this case. *See* Second Am. Compl. ¶ 52.

**F.    Appointment of Class Counsel**

Rule 23 requires that a court certifying a class also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B) & 23(g). Class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g) (4). In appointing class counsel, the court must consider the following: "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Class counsel has provided a Declaration [ECF No. 82-3] describing the background and qualifications of counsel at Edelman, Combs, Latturner & Goodwin, LLC. This includes a listing of the numerous cases they have filed under the FDCPA, both for individuals and as class actions. The Declaration reveals that counsel has adequate resources to devote to representation of the class. Additionally, counsel has already done extensive work in this matter to identify and investigate potential claims. The Court thus finds that Edelman, Combs, Latturner & Goodwin, LLC, are able to represent the interests of the class.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Plaintiff's Second Amended Motion for Class Certification [ECF No. 81]. The Court CERTIFIES A CLASS pursuant to Federal Rule of Civil Procedure 23(b)(3), defined as follows:

> (a) all individuals with addresses in Indiana or Illinois
> (b) to whom LVNV, Resurgent, or any debt collector employed by LVNV or Resurgent
> (c) sent a letter seeking to collect
> (d) a credit card debt on which the last payment had been made more than five years (Illinois residents) or six years (Indiana residents) prior to the letter
> (e) which letter was sent on or after
> > (i) December 17, 2012 in the case of Indiana residents or
> > (ii) February 28, 2011 in the case of Illinois residents and
> (f) on or before January 7, 2013
> (g) where the individual after receipt of the letter,
> > (i) made a payment,
> > (ii) filed suit, or
> > (iii) responded by requesting verification or contesting the debt.

A subclass is certified for those class members who received a copy of the letter attached as Exhibit A to the Second Amended Complaint. Illinois residents who fall within the revised class definitions in *McMahon v. LVNV Funding, LLC*, 1:12-CV-1410, are specifically excluded.

The Court APPOINTS Edelman, Combs, Latturner & Goodwin, LLC, as class counsel.

The Plaintiff's Motion for Leave to Cite Additional Authority [ECF No. 87], is GRANTED.

SO ORDERED on November 10, 2015.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION